IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–02306–EWN–MJW


KEVIN J. MASSARI,

      Plaintiff,

v.

JOHN H. POTTER, Postmaster, United States Postal Service,

      Defendant.

---

### ORDER AND MEMORANDUM OF DECISION

---

      This is an employment discrimination case.  Plaintiff Kevin Massari alleges that his former employer, the United States Postal Service ("USPS") — here embodied by Defendant Postmaster General John Potter — discriminated against him and retaliated against him for protected activity based upon his sex and physical and mental disabilities, all in violation of the Rehabilitation Act of 1973, 29 U.S.C.A. § 791 *et seq.* (2005); the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §§ 12101, 12203 (2005); and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e *et seq.* (2005), *as amended by* the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a (2005).  This matter is before the court on: (1) Defendant's "Motion for Summary Judgment and Supporting Brief," filed July 6, 2005; and (2) Plaintiff's "Motion to Strike Certain of Defendant's Exhibits Attached to Motion for Summary Judgment," filed July 22, 2005.  Jurisdiction is based on 28 U.S.C. § 1331.

# FACTS

## 1.    Factual Background

Plaintiff is a former employee of the USPS in Colorado Springs, Colorado.  (Compl. ¶ 3 [filed Nov. 5, 2004] [hereinafter "Compl."].)  On July 8, 2000, Plaintiff was involved in a serious car accident and sustained a closed head injury.  (Compl. ¶ 21.)  From July 2000 through October 2000, Plaintiff worked as a window clerk at the downtown post office in Colorado Springs, Colorado.  (Mot. for Summ. J. and Supp. Br., Undisputed Material Facts ¶ 1, Ex. A–1 at 19, 21 [Dep. of Kevin Massari] [filed July 6, 2005] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Resp. to Def.'s Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 1 [filed Aug. 4, 2005] [hereinafter, "Pl.'s Resp."].)

## a.    The October 10, 2000 Incident

On or about October 10, 2000, Plaintiff assisted a female customer who was shipping an express package.  (Def.'s Br., Undisputed Material Facts ¶ 1, Ex. A–1 at 22 [Dep. of Kevin Massari]; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 1.)  Plaintiff acquired the customer's personal information during the transaction, and subsequently went to the customer's residence.  (*Id.*)  In November 2000, Defendant brought disciplinary action against Plaintiff arising out of the incident with the female customer.[1]  (*Id.*,

---

[1]Plaintiff brought a formal grievance regarding Defendant's disciplinary action that ultimately resulted in a settlement agreement.  (Pl.'s Resp., Ex. 3 [Stipulation and Settlement Agreement].)  The agreement broadly states "this settlement will not establish any precedent whatsoever and may not be cited for [sic] any other proceeding in any forum."  (*Id.*)  Plaintiff has moved the court to strike part of Defendant's Exhibit A–13 to its motion for summary judgment.  (Pl.'s Mot. to Strike Certain of Def.'s Exs. Attached to Mot. for Summ. J. [filed July 22, 2005].)  The part of the exhibit in question refers explicitly to the settlement terms, but implicitly demonstrates Defendant's consideration of Plaintiff's disciplinary actions on record as a reason to terminate Plaintiff's employment.  (Def.'s Br., Ex. A–13 [Notice of Removal].)  Plaintiff admits

Undisputed Material Facts ¶ 2, Ex. A–1 at 23 [Dep. of Kevin Massari], Ex. A–3 [Notice of

Disciplinary Action]; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶ 2.)  In December 2000, Plaintiff bid for a position operating a small parcel bundle

sorter machine.  (Def.'s Br., Undisputed Material Facts ¶ 3, Ex. A–1 at 26–28 [Dep. of Kevin

Massari]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)

Defendant accepted Plaintiff's bid, and Plaintiff worked in the position from January 2001 through

November 2001.  (*Id.*)

> b.    ***Plaintiff's Light Duty Assignment and Accommodation Requests***

In November 2001, Plaintiff requested a light-duty assignment, due to back pain and other

physical problems Plaintiff suffered as a result of the July 8, 2000 car accident.  (Def.'s Br.,

Undisputed Material Facts ¶ 4, Ex. A–1 at 28, 33–34 [Dep. of Kevin Massari]; *admitted at* Pl.'s

Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.)  Plaintiff's physician advised

Defendant that Plaintiff's physical restrictions included no prolonged standing and no lifting more

than five pounds.  (*Id.*)  Defendant approved Plaintiff's request and assigned Plaintiff to a light-

---

that Defendant imposed disciplinary action against him based on the incident with the female
customer.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2; Def.'s Br., Ex. A–1
at 23–25 [Dep. of Kevin Massari].)  Plaintiff does not move to strike Defendant's Exhibit A–3,
which is the documentation of the disciplinary action.  For purposes of this order, I contemplate
the underlying actions leading up to the settlement agreement, and not the agreement or terms
themselves.

duty position boxing mail on "tour two" scheduled shift hours, from 7:00 a.m. to 3:30 p.m.[2]  (*Id.*)

On February 7, 2002, Plaintiff's psychologist, Dr. Edwin Shockney, and Plaintiff's psychiatrist, Dr. Mary Zesiewicz, collectively sent a letter to Defendant's medical unit, stating that Plaintiff was their patient and requesting consideration of their recommendations that Plaintiff: (1) be placed at a work station with minimal interaction with the public or co-workers, (2) remain on a day shift to ease sleep disorder concerns,[3] and (3) be given liberal restroom breaks because Plaintiff's medication necessitated frequent restroom usage.  (*Id.*, Undisputed Material Facts ¶ 5, Ex. A–4 [2/7/2002 Letter]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)  On March 4, 2002, Drs. Shockney and Zesiewicz sent a letter to Defendant's medical unit, stating that Plaintiff had been diagnosed with bipolar disorder, post traumatic stress disorder, and obsessive compulsive personality disorder and expressing confidence that Plaintiff's performance would improve with modifications and accommodations to Plaintiff's work and home environments.  (*Id.*, Undisputed Material Facts ¶ 6, Ex. A–5 [3/4/2002 Letter]; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 6.)  The letter did not specify what modifications or accommodations would be required, and did not refer back to the February 7, 2002 letter.  (*Id.*, Ex. A–5 [3/4/2002 Letter].)  On April 2, 2002, Dr. Shockney

---

[2]I gather from the parties' submissions that the USPS work shift hours are known as "tours."  I gather further that "tour two" scheduled shift hours are from 7:00 a.m. to 3:30 p.m. and "tour three" scheduled shift hours are from 5:00 p.m. to 1:30 a.m.  (Def.'s Br., Undiputed Material Facts ¶¶ 4, 17; *admitted at* Pl.'s Br., Resp. to Statement of Undisputed Material Facts ¶¶ 4, 17.)

[3]Since 2002, Plaintiff has been taking the medications Seroquel and Melatonin, which help him sleep six to eight hours approximately half of the time.  (Def.'s Br., Undisputed Material Facts ¶ 25, Ex. A–1 at 4–7 [Dep. of Kevin Massari].)

sent Defendant's medical unit a letter indicating that Plaintiff's restrictions and limitations were permanent and Plaintiff would not progress or improve beyond his then-current state.  (*Id.*, Undisputed Material Facts ¶ 7, Ex. A–6 [4/2/2002 Letter]; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 7.)

On or about April 2, 2002, Colorado Springs plant manager Garry Gilmore received a letter stating that Defendant's associate area medical director had reviewed Plaintiff's medical documentation and had imposed the following permanent restrictions on Plaintiff's employment: (1) placement at a work station with minimal interaction with the public or co-workers, (2) assignment to day shift hours, and (3) provision of liberal bathroom breaks, approximating one per hour.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts, Ex. 7 [4/8/2002 Letter]; *admitted in relevant part at* Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Reply Concerning Undisputed Facts ¶ 8 [filed Aug. 19, 2005 [hereinafter "Def.'s Reply"].)  The letter also stated that in the event that Gilmore could not accommodate Plaintiff's restrictions, Gilmore should nominate Plaintiff to Defendant's Reasonable Accommodation Committee.  (*Id.*, Resp. to Statement of Undisputed Material Facts, Ex. 7 [4/8/2002 Letter].)

Defendant maintains that on April 15, 2002, Gilmore nominated Plaintiff for consideration by Defendant's Reasonable Accommodation Committee because Gilmore could not accommodate Plaintiff's restrictions, due to a lack of available jobs during the "tour two" scheduled shift hours allowing Plaintiff to work by himself.  (Def.'s Br., Undisputed Material Facts ¶ 8, Ex. A–7 at 36, Ex. 3 [Dep. of Char Ehrenshaft].)  Plaintiff admits that Gilmore nominated Plaintiff for said consideration, but denies that no jobs were available during "tour two" scheduled shift hours, and

asserts that Plaintiff's restrictions did not require him to work alone.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 8, Ex. 7 [4/8/2002 Letter].)

On or about May 6, 2002, Plaintiff received notice that a meeting with the Reasonable Accommodation Committee was scheduled for May 15, 2002.  (Def.'s Br., Undisputed Material Facts ¶ 9; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.)  On May 14, 2002, Plaintiff requested that the Reasonable Accommodation Committee meeting be cancelled because he was considering applying for disability retirement.  (*Id.*, Undisputed Material Facts ¶ 12, Ex. A–7 at Ex. 3 [Dep. of Char Ehrenshaft]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.)  Plaintiff's case was closed until submission of further correspondence regarding Plaintiff's intent.  (*Id.*)

On July 31, 2002, Plaintiff and Dr. Shockney appeared for a hearing before the Reasonable Accommodation Committee.  (*Id.*, Undisputed Material Facts ¶ 14, Ex. A–7 at 27–30 [Dep. of Char Ehrenshaft]; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.)  The Reasonable Accommodation Committee found that Plaintiff's limitations were not covered by the Rehabilitation Act.  (*Id.*, Undisputed Material Facts ¶ 15, Ex. A–7 at 27–30, Ex. 3 [Dep. of Char Ehrenshaft]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 15.)

On or about August 15, 2002, Plaintiff's physician, Dr. Timothy Hall, requested that Plaintiff's light-duty assignment be extended for three months due to Plaintiff's physical limitations.[4]  (*Id.*, Undisputed Material Facts ¶ 16, Ex. A–10 [8/15/2002 Note].)  On August 28,

---

[4]Plaintiff's responses to Defendant's undisputed material facts get off-track in numbering at or around paragraph 16.  Accordingly, where the substance of Plaintiff's subsequent responses permits, I deem Defendant's statements admitted or denied.  I am struck by Plaintiff's failure to

2002, Gilmore notified Plaintiff that Plaintiff's request for a light-duty assignment had been approved, and Plaintiff was assigned to "tour three" scheduled shift hours, from 5:00 p.m. until 1:30 a.m.  (*Id.*, Undisputed Material Facts ¶ 17, Ex. A–1 at 34–35 [Dep. of Kevin Massari], Ex. A–11 [8/28/2002 Letter]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16.)  Defendant asserts that it assigned Plaintiff to work on "tour three" scheduled shift hours because of a lack of work meeting Plaintiff's restrictions during "tour two" scheduled shift hours.  (*Id.*, Undisputed Material Facts ¶ 17, Ex. A–1 at 34–35 [Dep. of Kevin Massari], Ex. A–7 at 27–30, Ex. A–11 [8/28/2002 Letter].)  Plaintiff asserts that manual mail-sorting work meeting Plaintiff's restrictions was available during "tour two" scheduled shift hours.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16, Statement of Additional Disputed Facts ¶ 8.)

Defendant asserts that Plaintiff and two other employees filed grievances because of the shift change.[5]  (Def.'s Br., Undisputed Material Facts ¶ 18, Ex. A–2 at 50–52 [Dep. of Garry Gilmore], Ex. A–12 [3/13/2003 Letter]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 17.)  Defendant asserts that the grievances were settled.  (*Id.*, Undisputed Material Facts ¶ 18.)  Plaintiff admits that his union settled his grievance, but maintains that he "did not sign off on the settlement because the settlement did not move [him]

---

resolve this obvious discrepancy, which is clearly evidenced by Plaintiff's twenty-*seven* separately numbered responses to Defendant's twenty-*eight* separately numbered statements.

[5]In support of this contention, Defendant refers the court to Defendant's Exhibit A–10, which it describes as a union agreement.  (Def.'s Br., Undisputed Material Facts ¶ 18.)  In fact, Defendant's Exhibit A–10 is Dr. Hall's request that Plaintiff's light-duty assignment be extended. The agreement described is attached to Defendant's brief as Exhibit A–12.

back to [t]our [two]."[6]  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 17, Ex. 1 ¶ 10 [Aff. of Kevin Massari].)

Defendant alleges that on August 30, 2002, Dr. Shockney wrote a letter in which he opined the accommodation on "tour three" scheduled shift hours was appropriate for Plaintiff.[7] (Def.'s Br., Undisputed Material Facts ¶ 19, Ex. A–1 at 59 [Dep. of Kevin Massari].)  Plaintiff alleges Dr. Shockney's letter states that the "tour three" scheduled shift hours were not appropriate for Plaintiff.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 18, Ex. 18 ¶ 8 [Aff. of Edwin Shockney, Ph.D.].)

### c.     *The May 9, 2002 Incident*

On or about May 9, 2002, one of Plaintiff's female co-workers reported that Plaintiff had subjected her to unsolicited and unwanted sexual harassment.  (Def.'s Br., Undisputed Material Facts ¶ 10, Ex. A–2 at 20, 41 [Dep. of Garry Gilmore].)  On May 11, 2002, Defendant put Plaintiff on "emergency placement" without pay, pending an investigation into the sexual harassment allegations.  (*Id.*, Undisputed Material Facts ¶ 10, Ex. A–1 at 44–46 [Dep. of Kevin

---

[6]In his response, Plaintiff asserts that he "did not know about or agree to this settlement." (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 17.)  Plaintiff's assertion is quite curious, given his statement in his affidavit, which imparts specific knowledge of the settlement terms.  (*Id.*, Resp. to Statement of Undisputed Material Facts, Ex. 1 ¶ 10 [Aff. of Kevin Massari].)

[7]In support of its statement, Defendant cites a section of Plaintiff's deposition, styled as Defendant's Exhibit A–1, in which Plaintiff specifically refers to and discusses the August 30, 2002 letter.  (Def.'s Br., Undisputed Material Facts ¶ 19.)  Defendant also cites to Exhibit 2 to the deposition, implying that the letter is attached thereto.  (*Id.*)  In fact, the Exhibit 2 to which Plaintiff refers is a letter from February 2002.  (*Id.*, Undisputed Material Facts, Ex. A–1 at Ex. 2 [Dep. of Kevin Massari].)  Confoundingly, the August 30, 2002 letter does not appear anywhere in Defendant's submissions, other than as a topic of discussion in Plaintiff's deposition.  I admonish Defendant to proofread more carefully in order to avoid such misrepresentations.

Massari], Ex. A–2 at 20, 41–48 [Dep. of Garry Gilmore], Ex. A–9 [Emergency Procedure];

*deemed admitted at* Compl. ¶ 30.)  Plaintiff filed a formal grievance regarding the emergency

placement, which ultimately resulted in a settlement agreement accompanied by disciplinary

action.[8]  (*Id.*, Undisputed Material Facts ¶ 10 Ex. A–1 at 44–46 [Dep. of Kevin Massari], Ex. A–2

at 20, 41–48 [Dep. of Garry Gilmore], Ex. A–9 [Emergency Procedure]; *admitted in relevant*

*part* at Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 10.)

### d.      The January 8, 2003 Incident

On January 8, 2003, Plaintiff and co-worker John Sandoval were involved in an altercation

marked by shouting and profanity.  (*Id.*, Undisputed Material Facts ¶ 20, Ex. A–1 at 35–38 [Dep.

of Kevin Massari]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material

Facts ¶ 19.)  After learning of the incident, Plaintiff's supervisors put Plaintiff on emergency

placement without pay.  (*Id.*, Undisputed Material Facts ¶ 20, Ex. A–1 at 38 [Dep. of Kevin

Massari].)  On February 3, 2003, Plaintiff was issued a notice of removal, which proposed to

terminate Plaintiff's employment after thirty days.  (*Id.*, Undisputed Material Facts ¶ 21, Ex. A–13

[Notice of Removal]; *deemed admitted in relevant part at* Pl.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶ 20.)

In February 2003, prior to termination of his employment, Plaintiff applied for disability

retirement.  (*Id.*, Undisputed Material Facts ¶ 22; *deemed admitted at* Pl.'s Resp., Resp. to

Statement of Undisputed Material Facts ¶ 21.)  On or about September 3, 2003, the United States

Office of Personnel Management notified Defendant that it had approved Plaintiff's application.

---

[8]As stated above, I consider the underlying events leading up to the settlement agreement,
and not the agreement or its terms themselves.

(*Id.*, Undisputed Material Facts ¶ 23, Ex. A–14 [8/3/2003 OPM Notice]; *deemed admitted at* Pl.'s

Resp., Resp. to Statement of Undisputed Material Facts ¶ 22.)

On or about March 18, 2003, Plaintiff submitted a health benefits election form indicating

that he wished to cancel his enrollment in the federal employee health benefits program.  (*Id.*,

Undisputed Material Facts ¶ 24, Ex. A–8 at 4 [EEO Investigative Aff. of Charmaine Ehrenshaft];

*deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 23.)

Ehrenshaft explained to Plaintiff that benefits could be cancelled only at certain times of the year.

(*Id.*)  On April 5, 2003, Plaintiff's benefits were cancelled.  (*Id.*)

**2.      *Procedural History***

Plaintiff asserts that he filed complaints with the Equal Employment Opportunity

Commission ("EEOC"): (1) on September 20, 2002, alleging discrimination based upon sex and

disability and retaliation based upon prior EEOC activity; (2) on October 23, 2002, alleging

disability discrimination and retaliation for prior EEOC activity in the Reasonable

Accommodation Committee's finding that Plaintiff was not covered under the Rehabilitation Act;

(3) on March 23, 2003, alleging race and disability discrimination and retaliation for prior EEOC

activity in being placed on emergency placement on January 8, 2003; and (4) on April 5, 2003,

alleging disability discrimination and retaliation in being given a notice of removal terminating

Plaintiff's employment on February 24, 2003.  (Compl. ¶¶ 5, 6, 8, 9.)  On December 23, 2002,

Plaintiff's first and second complaints were consolidated.  (Compl. ¶ 7.)  On February 24, 2003,

Plaintiff requested a hearing before the EEOC.  (Compl. ¶ 12.)  On July 31, 2003, Plaintiff's third

and fourth complaints were consolidated with the first two complaints.  (Compl. ¶ 10.)  On

September 2, 2003, Plaintiff amended his complaint to add a claim for continuing retaliation

against him by Char Ehrenshaft in failing to cancel Plaintiff's health insurance benefits.  (*Id.* ¶ 11.)

On February 24, 2003, Plaintiff requested a hearing before the EEOC.  (*Id.* ¶ 12.)  On July 16,

2004, Plaintiff withdrew his request for a hearing in order to file his complaint in this court.  (*Id.* ¶

13.)  Plaintiff exhausted his administrative remedies by filing his complaint subsequent to the

passing of one hundred and eighty days since his last amendment and three hundred and sixty days

since the filing of the original EEOC complaint.[9]  29 C.F.R. §§ 1614.106(e)(2), 1614.407(b)

(2005).

On November 5, 2004, Plaintiff filed a complaint in this court.  (Compl.)  Plaintiff argues

that Defendant discriminated and retaliated against him based on his sex and disability and

violated Title VII, the ADA, and the Rehabilitation Act by: (1) failing to find Plaintiff disabled or

to accommodate his disabilities under the Rehabilitation Act; (2) putting Plaintiff on emergency

placement on January 8, 2003; (3) issuing Plaintiff a notice of removal on February 3, 2003; and

(4) delaying cancellation of Plaintiff's healthcare benefits.[10]  (Compl. ¶¶ 5–52.)  On January 10,

2005, Defendant filed an Answer.  (Answer [filed Jan. 10, 2005].)

---

[9]Defendant contends that Plaintiff did not exhaust his administrative remedies regarding sex discrimination.  (Def.'s Br. at 17.)  Defendant impermissibly relies on an unsigned, undated declaration to support.  (*Id.*, Ex. A–15 [Decl. of Jon Inglis].)  Unsworn written declarations can support a motion for summary judgment, so long as the declaration has been: (1) subscribed as true under penalty of perjury, (2) signed by the declarant, and (3) dated.  *See* 28 U.S.C.A. § 1746 (2005); Fed. R. Civ. P. 56(e) (2005); *Barlow v. Conn.*, 319 F. Supp. 2d 250, 257 (D. Conn. 2004).  Inglis's unsigned and undated statement cannot properly be considered a declaration under 28 United States Code section 1746.  Therefore, I do not rely upon this document in my analysis.

[10]Impressively, Plaintiff's complaint — which purports to state but two claims  — combines the seemingly mutually exclusive *ethe* of gluttony and minimalism by evoking several statutes, but stating only the barest-boned claims thereunder.  To simplify matters, I parse Plaintiff's complaint by claim, statute, and action.  I remind Plaintiff that it is not this court's task to make Plaintiff's arguments for him or to link Plaintiff's alleged facts to his stated claims.

On July 6, 2005, Defendant filed a motion for summary judgment.  (Def.'s Br.)  Defendant argues that Plaintiff: (1) cannot maintain his claims for discrimination under Title VII, the ADA, or the Rehabilitation Act, because Plaintiff cannot establish the requisite *prima facie* cases; and (2) cannot maintain his claims for retaliation under Title VII, the Rehabilitation Act, or the ADA, because he cannot demonstrate that Defendant's legitimate, nondiscriminatory reasons for the adverse employment actions were pretextual.  (*Id.* at 9–18.)  On August 8, 2005, Plaintiff filed a response to Defendant's motion for summary judgment.  (Pl.'s Resp.)  On August 19, 2005, Defendant filed a reply in support of its motion for summary judgment.  (Def.'s Reply.)  This matter is fully briefed.

On July 22, 2005, Plaintiff filed a motion to strike certain of Defendant's exhibits to its motion for summary judgment.  (Pl.'s Mot. to Strike Certain of Def.'s Exs. Attached to Mot. for Summ. J. [filed July 22, 2005] [hereinafter "Pl.'s Mot."].)  Plaintiff argues that this court should strike two of Defendant's exhibits: (1) an unsigned, undated declaration, for failure to comport with local rules; and (2) a reference to settlement agreement terms that Plaintiff alleges are sealed under the settlement agreement.  (*Id.* at 1–3.)  On August 19, 2005, Defendant filed a response to Plaintiff's motion to strike, justifying its exhibits and asserting that Plaintiff failed to follow this court's procedures.  (Def.'s Resp. to Pl.'s Mot. to Strike Certain of Def.'s Exs. Attached to Mot. for Summ. J. at 1–3 [filed Aug 18, 2005] [hereinafter "Def.'s Resp."].)  Plaintiff did not file a reply to Defendant's response.

# ANALYSIS

## 1.    Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

-13-

**2.      Evaluation of Claims**

**a.      Preliminary Matters**

Before turning to the substantive issues in this case, I address three preliminary matters.

First, I address Plaintiff's motion to strike two of Defendant's exhibits.  The other matters relate

to the threshold requirement of adverse employment action and the burden of proof for anti-

discrimination claims.

**i.      Plaintiff's Motion to Strike**

Plaintiff moves to strike: (1) the unsigned, undated declaration of Jon Inglis, and (2) a part

of Plaintiff's notice of removal referring to settlement agreement terms.  (Pl.'s Mot. at 1–2.)  In

contravention of this court's local rules, Plaintiff failed to state his specific efforts to confer with

Defendant regarding his motion to strike.  *See* D.C. Colo. L. Civ. R. 7.1A.  Plaintiff's motion is

therefore denied for failure to comport with United States District Court for the District of

Colorado Civil Rule 7.1A.[11]

**ii.      Adverse Employment Action**

Generally, an adverse employment action is a fundamental requirement to maintain anti-

discrimination claims under Title VII, the ADA, and the Rehabilitation Act.  *See Jackson v. City*

*of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005) (adverse employment action required to maintain a

claim under the Rehabilitation Act); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1228–29 (10th Cir.

2004) (adverse employment action required to maintain a claim under the ADA); *Wells v. Colo.*

*Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003) (adverse employment action required to

---

[11]Although I deny Plaintiff's motion for failure to comport with local rules, I note that my
determinations in this Order regarding the exhibits in question essentially moot the motion.

maintain a claim under Title VII).  As an exception, the anti-discrimination claim of failure to accommodate a disability under the Rehabilitation Act does not require an adverse employment action *per se.*  *See DiCarlo v. Potter*, 358 F.3d 408, 419–20 (6th Cir. 2004).

Plaintiff alleges that Defendant took the following adverse employment actions against him: (1) failing to find that Plaintiff's impairments were covered under the Rehabilitation Act or to accommodate Plaintiff's impairments thereunder; (2) putting Plaintiff under emergency placement on January 8, 2003; (3) issuing Plaintiff a notice of removal on February 3, 2003; and (4) failing to cancel Plaintiff's health insurance.  (Compl. ¶¶ 6, 8, 9, 11.)

Generally, for an employment action to be considered adverse, the action "'must be materially adverse to the employee's job status. . . .  The adverse action must amount to a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1314 (10th Cir. 2005) (quoting *Meiners*, 359 F.3d at 1230).  Thus, the February 3, 2003 notice of removal, which indicated impending termination of Plaintiff's employment, is clearly an appropriate subject of his claims.  Further, the Tenth Circuit has held that "[d]isciplinary proceedings, such as warning letters and reprimands can constitute [] adverse employment action[s]." *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005).  Accordingly, Plaintiff's January 8. 2003 emergency placement is also an adverse employment action and a proper subject of Plaintiff's claims.

Neither Defendant's failure to find Plaintiff disabled nor Defendant's failure to accommodate him under the Rehabilitation Act is an adverse employment action.  Neither action adversely affected Plaintiff's job status or affected his material employment status in any

meaningful way.  In November 2001, Plaintiff requested and was granted a light-duty assignment

boxing mail.  (Compl. ¶ 27; Def.'s Br., Undisputed Material Facts ¶ 4, Ex. A–1 at 28, 33–34

[Dep. of Kevin Massari].)  On August 2, 2002, the Reasonable Accommodation Committee

entered its negative disability determination under the Rehabilitation Act.  (Def.'s Br., Undisputed

Material Facts ¶ 15, Ex. A–7 at Ex. 3 [Dep. of Char Ehrenshaft]; *admitted at* Pl.'s Resp. ¶ 15.)

No evidence suggests that Plaintiff's job responsibilities, salary or benefits changed after the

Reasonable Accommodation Committee decision.  Plaintiff remained in the same light-duty

assignment position after the Reasonable Accommodation Committee decision, as evidenced by

Plaintiff's physician's August 15, 2002 request to extend Plaintiff's light-duty assignment.  (*Id.*,

Undisputed Material Facts ¶ 16, Ex. A–10 [Hall Request].)  On August 28, 2002, Defendant

extended Plaintiff's light-duty assignment, but changed Plaintiff's shift hours.  (*Id.*, Undisputed

Material Facts ¶ 16, Ex. 11 [08/29/02 letter], Ex. A–1 at 34–35 [Dep. of Kevin Massari];

*admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16.)  Plaintiff

characterizes the shift-change as a failure to accommodate him.  (Pl.'s Resp. at 14.)  No evidence

suggests that the shift-change altered Plaintiff's job responsibilities, salary, or benefits.

Accordingly, the shift-change is not an adverse employment action.  *See Washington v. Ill. Dep't*

*of Revenue*, 420 F.3d 658, 659 (7th Cir. 2005) (holding a change in work hours, where salary and

duties remain the same is not an adverse employment action); *accord Grube v. Lau Industries,*

*Inc.*, 257 F.3d 723, 729 (7th Cir. 2001); *Watts v. Kroger Co.*, 170 F.3d 505, 510–12 (5th Cir.

1999).

      Additionally, Defendant's failure to cancel Plaintiff's health benefits immediately after

Plaintiff's request is not an adverse employment action.  The parties do not dispute that: (1) on

March 18, 2003, Plaintiff requested to cancel his health benefits; (2) Ehrenshaft informed Plaintiff that health benefits could only be cancelled at certain times during the year; (3) Plaintiff's last day in a pay status was March 25, 2003; and (4) Plaintiff's benefits were cancelled effective April 5, 2003.  (Def.'s Br., Undisputed Material Facts ¶ 24, Ex. A–8 at 4 [EEO Investigative Aff. of Charmaine Ehrenshaft]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 23.)  Although Defendant's actions relate to Plaintiff's benefits, it is difficult indeed to ascertain how Defendant's action affected Plaintiff's job status adversely, or at all. Indeed, during the three-week time period between Plaintiff's application and Defendant's cancellation, Plaintiff was in the process of applying for disability retirement and was not under active employment with Defendant.  (Def.'s Br., Undisputed Material Facts ¶ 22, 23, Ex. A–8 at 3–4 [EEO Investigative Aff. of Charmaine Ehrenshaft]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 21, 22, 23.)  Thus, the only adverse employment actions properly before the court in this case are the January 8, 2003 emergency placement and the February 3, 2003 notice of removal.  Consequently, I limit my analysis and discussion of Plaintiff's claims to these two actions.

### iii.   *Burden of Proof for Discrimination and Retaliation Claims*

Plaintiff relies on indirect evidence to demonstrate employment discrimination in this case, therefore I apply the three-step burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 800–07 (1973).  First, under the *McDonnell Douglas* framework, Plaintiff carries the burden of raising a genuine issue of material fact as to each element of his *prima facie* case.  *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001).  The "burden of establishing a *prima facie* case" is "not onerous."  *Id.*  (citation and internal quotation marks

omitted).  Second, if Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Wells*, 325 F.3d at 1212 (citing *McDonnell Douglas*, 411 U.S. at 802–03).  Third, if Defendant articulates such a legitimate, nondiscriminatory reason for its action, the burden shifts back to Plaintiff and summary judgment is warranted, unless Plaintiff can demonstrate a genuine issue of material fact as to whether Defendant's "asserted reasons for the adverse action are pretextual." *Id.* (citation and internal quotation marks omitted); *accord Jones v. Denver Post Corp.*, 203 F.3d 748, 756 (10th Cir. 2000).

The *McDonnell Douglas* framework applies to all of Plaintiff's claims under Title VII, the ADA, and the Rehabilitation Act, except Plaintiff's claim for failure to accommodate under the Rehabilitation Act.  *See Peebles v. Potter*, 354 F.3d 761, 765–66 (8th Cir. 2004) (holding *McDonnell Douglas* framework does not apply to failure to accommodate claims under the Rehabilitation Act); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (applying *McDonnell Douglas* framework to ADA claims); *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (applying *McDonnell Douglas* framework to Title VII claims); *Williams v. Widnall*, 79 F.3d 1003, 1005 (10th Cir. 1996) (applying *McDonnell Douglas* framework to Rehabilitation Act disparate treatment claims).  The *McDonnell Douglas* framework also applies to Plaintiff's retaliation claims.  *See Wells*, 325 F.3d at 1212. Accordingly, where applicable, I analyze each of Plaintiff's claims under the *McDonnell Douglas* framework.

### b.     Plaintiff's Title VII Discrimination and Retaliation Claims

Defendant argues that it is entitled to summary judgment on Plaintiff's claims for relief for Title VII discrimination and retaliation.  (Def.'s Br. at 17.)  Plaintiff alleges that Defendant discriminated and retaliated against him in violation of Title VII when Defendant put Plaintiff on emergency placement and issued Plaintiff a notice of removal.  (Compl. ¶ 6, 8, 45.)  Defendant counters that Plaintiff cannot maintain his claims because he: (1) did not exhaust his administrative remedies; and (2) cannot establish the requisite *prima facie* cases and cannot debunk Defendant's legitimate, nondiscriminatory reasons for the adverse employment actions.  (Def.'s Br. at 14–17.)  The *McDonnell Douglas* burden-shifting framework applies to Plaintiff's discrimination and retaliation claims.  *Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1283 (10th Cir. 2003).  I address each step in turn with respect to each claim.

### i.     Title VII Discrimination — Reverse Discrimination

Under Title VII, it is an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92–93 (2003) (citing 42 U.S.C. § 2000e-2[a][1]).  Title VII also prohibits so-called "reverse discrimination," where an employer discriminates against a member of a historically favored group.  *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976).  Males constitute one such historically favored group under Title VII to which reverse discrimination analysis applies.  *See EEOC v. Wendy's of Colo. Springs, Inc.*, 727 F. Supp 1375, 1382 (D. Colo. 1989) (citing *Livingston v. Roadway Express, Inc.*, 802 F.2d 1250, 1252 [10th Cir. 1986]).  Plaintiff argues that Defendant discriminated against him based on his sex by putting Plaintiff on emergency placement and issuing Plaintiff a notice of

removal.  (Compl. ¶¶ 7, 9, 45, 46.)  Defendant asserts that Plaintiff did not exhaust his

administrative remedies and cannot establish a *prima facie* case for sex discrimination.  (Def.'s Br.

at 14–17.)

### (1)      *Exhaustion of Administrative Remedies*

Defendant argues that Plaintiff did not exhaust his administrative remedies because

Plaintiff did not assert sex discrimination in any of his EEOC complaints.  (Def.'s Br. at 17.)  In

support of its contention, Defendant impermissibly relies on the unsigned, undated declaration of

Jon Inglis.[12]  (Def.'s Br., Ex. A–15 [Decl. of Jon Inglis].)   Plaintiff asserts that on September 20,

2002, he filed an EEOC complaint containing allegations of sex discrimination and retaliation.

(Compl. ¶ 5.)  I must resolve this factual discrepancy in the light most favorable to Plaintiff.

*Byers*, 150 F.3d as 1274.  Therefore, I progress to the *McDonnell Douglas* analysis of Plaintiff's

claim.

### (2)      *Prima Facie Case*

Ordinarily, in order to establish a *prima facie* case for sex discrimination, a plaintiff must

demonstrate that he or she: (1) is a member of a protected class; (2) suffered an adverse

employment action; (3) was qualified for the position at issue; and (4) was treated less favorably

than others not in the protected class.  *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th

Cir. 1998).

---

[12]Defendant asserts that Inglis signed the declaration, but in preparing and electronically
filing the document, Defendant's counsel neglected to include the requisite electronic signature
demarcation.  (Def.'s Resp. at 2.)  In light of this argument, Defendant's failure to attach a copy
of the purportedly signed document to its response is perplexing indeed.

### (a)      Protected Class

The Tenth Circuit has modified the first element of the *prima facie* case for those plaintiffs who are members of historically favored groups.  In a reverse discrimination case, a plaintiff must "establish background circumstances that support an inference that the [employer] is one of those unusual employers who discriminates against the majority."  *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992); *see also Mattioda v. White*, 323 F.3d 1288, 1292 (10th Cir. 2003); *Taken v. Okla. Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997).  Alternatively, a plaintiff may establish a *prima facie* case for reverse discrimination with "indirect evidence sufficient to support a reasonable probability[] that but for the plaintiff's status[,] the challenged employment decision would have favored the plaintiff."[13]  *Notari*, 971 F.2d at 590.

Here, Plaintiff has done nothing to satisfy the first element of a *prima facie* case.  Indeed, Plaintiff makes no mention whatsoever of his Title VII claim in his response to Defendant's motion for summary judgment.  (Pl.'s Resp., *passim*.)  Plaintiff's only factual allegation with respect to his Title VII claim is that "Defendant discriminated against Plaintiff in the terms, conditions and privileges of his employment on the basis of sex . . ."  (Compl. ¶ 45.)  Plaintiff's patently conclusory  allegation is wholly insufficient to prevail on summary judgment.  *See Salgueo v. Clovis*, 366 F.3d 1168, 1178 (10th Cir. 2004).  Plaintiff has not met his burden to establish a *prima facie* case, therefore I need not analyze the subsequent steps of the *McDonnell Douglas* framework.  Defendant is entitled to summary judgment on Plaintiff's claim for sex discrimination.

---

[13]*Notari* "does not displace the *McDonnell Douglas* paradigm but simply provides an alternative basis upon which plaintiffs may satisfy their *prima facie* burden."  *Notari*, 971 F.2d at 591.

### ii.    Retaliation

Under Title VII, it is unlawful "'for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (quoting 42 U.S.C. § 2000e-3[a]). Plaintiff alleges that Defendant violated Title VII and retaliated against Plaintiff by putting Plaintiff on emergency placement and issuing him a notice of removal.  (Compl. ¶ 8, 9, 49–51.) Defendant alleges that it is entitled to summary judgment because Plaintiff cannot establish that Defendant's legitimate, nondiscriminatory reasons for the adverse employment actions were pretextual.  (Def.'s Br. at 17–18.)  The *McDonnell Douglas* framework applies to Plaintiff's retaliation claim.  *McGarry v. Bd. of County Comm'rs*, 175 F.3d 1193, 1201 (10th Cir. 1999).  I address each stage in turn.

### (1)    Prima Facie Case

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) he engaged in protected opposition or participated in a Title VII proceeding; (2) Defendant took adverse action against Plaintiff subsequently to or contemporaneously with Plaintiff's protected activity; and (3) a causal connection exists between Plaintiff's activity and the Defendant's  action. *Mattioda*, 323 F.3d at 1293 (citing *Love v. Re/Max of America, Inc.*, 738 F.2d 383, 385 [10th Cir. 1984]).

### (a)    Protected Opposition

Plaintiff asserts that he filed a complaint with the EEOC alleging sex discrimination on September 20, 2002. (Compl. ¶ 5.) Plaintiff asserts that he subsequently filed additional EEOC complaints, but does not assert that any of these complaints alleged sex discrimination. (Compl. ¶¶ 6, 8, 9.) Given that Plaintiff made no opposition to sex discrimination in his subsequent EEOC complaints, it is illogical that Defendant would retaliate against Plaintiff for such non-existent opposition. Consequently, viewing the facts in the light most favorable to Plaintiff, I find that Plaintiff's September 20, 2002 EEOC complaint satisfies the first element and serves as protected opposition. *See Byers*, 150 F.3d at 1274.

### (b)      *Contemporaneous with Adverse Action*

Defendant put Plaintiff on emergency placement on January 8, 2003 and issued Plaintiff a notice of removal on February 3, 2003. (Def.'s Br., Undisputed Material Facts ¶¶ 20, 21; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 20.) Plaintiff undertook his purported protected opposition on September 20, 2002. (Compl. ¶ 5.) The approximated three-month window between the protected opposition and the first adverse employment action is sufficiently contemporaneous to progress to the third prong.

### (c)      *Causal Connection*

A causal connection may be demonstrated in Title VII cases "by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). Unless the adverse action is "very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation." *Meiners*, 359 F.3d at 1231 (citation omitted). More specifically, the Tenth Circuit

has found that a "six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient." *Id.* More than three months passed between Plaintiff's September 20, 2002 filing and Plaintiff's January 8, 2003 emergency placement. Obviously, still more time passed between Plaintiff's September 20, 2002 filing and the February 3, 2003 notice of removal. Accordingly, proximity in time between Plaintiff's protected opposition and Defendant's adverse employment actions does not support Plaintiff's claim. Plaintiff has offered nothing beyond the temporal proximity in support of his claim, and thus fails to establish a *prima facie* case. Therefore, I need not analyze the subsequent *McDonnell Douglas* stages. Defendant is entitled to summary judgment on Plaintiff's claim for retaliation under Title VII.

> ### c.      *Plaintiff's Claims Under the ADA*

Plaintiff has no remedy for employment discrimination under the ADA, because he was an employee of the USPS, which is not an "employer" under the express terms of the ADA. *See* 42 U.S.C.A. § 12111(5)(B)(i) (2005). The Rehabilitation Act incorporates the standards from the ADA, and "under the Rehabilitation Act, 'section 501 is the exclusive remedy for discrimination in employment by the [USPS] on the basis of handicap.'"[14]  *Johnson v. United States Postal Serv.*, 861 F.2d 1475, 1481 (10th Cir. 1988) (quoting *Boyd v. United States Postal Serv.*, 752 F.2d 410, 413 [9th Cir. 1985]); *see also Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005); *Rivera v. Heyman*, 157 F.3d 101, 103 (6th Cir. 1998). Consequently, I analyze Plaintiff's disability discrimination and retaliation claims under the Rehabilitation Act.

---

[14]I use the terms "disability" and "handicap" interchangeably in this order. *See Bragdon v. Abbott*, 524 U.S. 624, 631–32 (1998) ("The ADA's definition of disability is drawn almost verbatim from the definition of 'handicapped individual' included in the Rehabilitation Act").

### d.      Plaintiff's Claims Under the Rehabilitation Act

Defendant argues that it is entitled to summary judgment on Plaintiff's claims for

discrimination and retaliation under the Rehabilitation Act.  (Def.'s Br. at 9–17.)  Plaintiff asserts

that Defendant discriminated and retaliated against him by failing to accommodate his disabilities,

putting him on emergency placement, and issuing him a notice of removal.  (Compl. ¶¶ 6, 8, 45,

49–51.)  Defendant argues that Plaintiff: (1) cannot maintain his claims for discrimination because

he cannot establish the requisite *prima facie* case, and (2) cannot maintain his claim for retaliation

because he cannot discredit Defendant's legitimate, nondiscriminatory reasons for the adverse

employment actions as pretextual.  (Def's Br. at 9–17.)

### i.      Discrimination under the Rehabilitation Act

The Rehabilitation Act, which expressly applies to federal agencies and programs

receiving federal financial assistance, protects disabled employees from discrimination and

requires that covered employers provide reasonable accommodations to disabled employees.  *See*

29 U.S.C.A. §§ 791–96 (2005).  Specifically, the Rehabilitation Act provides that "no otherwise

qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded

from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity . . . conducted by any Executive agency or the [USPS]."  29 U.S.C.A. §

794(a) (2005).

The Rehabilitation Act thus encompasses two means of discrimination — failure to

accommodate and disparate treatment.  *See Peebles*, 354 F.3d at 765–66.  Plaintiff argues that

Defendant violated the Rehabilitation Act and discriminated against him in both failing to

accommodate his disability and according him disparate treatment.  (Compl. ¶¶ 45, 16, 49; Pl.'s

Resp. at 10–13, 16.)  Defendant argues that Plaintiff cannot establish the requisite *prima facie* case in that Plaintiff cannot demonstrate that he is disabled within the meaning of the Rehabilitation Act.  (Def.'s Br. at 9–12.)  Reasonable accommodation claims are evaluated under a "'modified burden-shifting analysis'" rather than *McDonnell Douglas*.  *Peebles*, 354 F.3d at 766.  Disparate treatment claims under the Rehabilitation Act are evaluated under *McDonnell Douglas*.  *Id.*  I apply the appropriate framework to each claim in turn.

### *(1)    Failure to Accommodate*

Section 501 of the Rehabilitation Act requires federal agencies to develop affirmative action programs for the hiring, placement, and advancement of individuals with disabilities.  *See* 29 U.S.C.A. § 791(b) (2005).  "It is well established both by the statutory language and Supreme Court decisions interpreting the [Rehabilitation] Act that federal employers have greater duties to accommodate disabled workers under section 501 than the duties owed by federal grantees under section 504 or those owed by employers under the ADA."  *Woodman v. Runyon*, 132 F.3d 1330, 1343 (10th Cir. 1997).  Reasonable accommodation claims are evaluated under a "'modified burden-shifting analysis.'"  *Peebles*, 354 F.3d at 766.  The employee must first establish a *prima facie* case, then the burden shifts to the employer to demonstrate that reasonable accommodation would impose an undue hardship on its operations.  *See DiCarlo*, 358 F.3d at 419–20 (6th Cir. 2004).

### (a)      Prima Facie Case

To establish a *prima facie* case for failure to accommodate under the Rehabilitation Act, Plaintiff must show that: (1) he is an individual with a disability within the meaning of the Rehabilitation Act; (2) he is "otherwise qualified" for the position, meaning he could perform the essential functions of the job with reasonable accommodation; (3) Defendant was aware of Plaintiff's disability; (4) Plaintiff needed an accommodation, meaning a causal relationship existed between the disability and the request for accommodation; and (5) Defendant failed to provide the necessary accommodation.  *DiCarlo*, 358 F.3d at 419–20 (citing *Gaines v. Runyon*, 107 F.3d 1171, 1175–76 [6th Cir. 1997]).

### (i)      Disability Under the Rehabilitation Act

Under the express terms of the Rehabilitation Act, the applicable standards in cases alleging violation "shall be the standards applied under title I of the [ADA]."  29 U.S.C.A. § 794(d) (2005).  Thus, although the Rehabilitation Act itself defines the term "disabled," the ADA definition applies.  *See McGeshick*, 357 F.3d at 1150.  Under ADA standards, and therefore under Rehabilitation Act standards, a disability is defined as: "'(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"  *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 361 (2001) (citing 42 U.S.C. § 12102[2]).  Plaintiff argues that he meets all three definitions of disability, accordingly, I analyze each in turn.  (Pl.'s Resp. at 16.)

*1)*        ***Impairment Substantially Limiting Activity***

In order to establish a disability, Plaintiff may show that he has a mental or physical impairment that "substantially limits" one or more of his major life activities.  42 U.S.C.A. § 12102(2) (2005).  This definition contains three elements: first, Plaintiff must have a recognized impairment; second, Plaintiff must identify one or more appropriate major life activities; and third, Plaintiff must show that the impairment substantially limits one or more of those activities. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003).

First, Plaintiff asserts that he has a "documented, long-standing" mental impairment in the form of bipolar disorder, post-traumatic stress disorder, obsessive-compulsive disorder, and personality disorder, and that he was diagnosed with bipolar disorder in or around 1992.[15]  (Pl.'s Resp. at 10, Resp. to Statement of Undisputed Material Fact ¶ 5, Ex. 4 [6/4/1992 Letter], Ex. 18 ¶¶ 3, 4 [Aff. of Edwin Shockney, Ph.D.]; Compl. ¶ 25.)  The statutory definition of a mental impairment includes "[a]ny mental or psychological disorder, such as  . . . mental illness."  29 C.F.R. § 1630.2(h)(2) (2005).  The Tenth Circuit has specifically found bipolar disorder to be a mental impairment covered under the ADA.  *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1081 (10th Cir. 1997).  Thus, Plaintiff has adequately established that he has a recognized mental impairment.

---

[15]Plaintiff argues that he "has both physical and mental impairment [sic]," (Pl.'s Resp. at 16) but makes no mention of what his physical impairment might be other than passing references to "chronic pain arising from head, neck and lower back injuries."  (Compl. ¶¶ 23, 27.) Moreover, Plaintiff is silent as to what major life activities his physical impairment limits.  (Pl.'s Resp., *passim*; Compl., *passim*.)  Indeed, Plaintiff claims that his impairment interferes with the markedly non-physical major life activities of concentrating and interacting with others.  (Pl.'s Resp. at 11.) Thus, I decline to analyze further Plaintiff's alleged physical impairment.

Second, Plaintiff alleges that his impairment substantially limits the major life activities of concentrating and interacting with others.  (Pl.'s Resp. at 10–11.)  The Tenth Circuit has found that concentration may be a component of a major life activity, but is not a major life activity in and of itself.  *See Doebele*, 342 F.3d at 1130; *Poindexter v. Atchison, Topeka & Santa Fe. Ry. Co.*, 168 F.3d 1228, 1231 (10th Cir. 1999).  Courts are split as to whether interacting with others is a major life activity.  *See McAlindin v. County of San Diego*, 192 F.3d 1224, 1234–35 *amended by* 201 F.3d 1211 (9th Cir. 2000) (holding that "interacting with others" is a major life activity); *cf. Soileau v. Guilford of Maine, Inc*., 105 F.3d 12, 15 (1st Cir. 1997) (expressing doubt that "interacting with others" qualifies as a major life activity, but assuming for purposes of argument that it does).  The Tenth Circuit has not definitively resolved the issue.  *See Steele v. Thiokol Corp.*, 241 F.3d 1248, 1254–55 (10th Cir. 2001) (noting question not resolved in Tenth Circuit and not resolving it.)  Thus, I assume, *arguendo*, that interacting with others is a major life activity and progress with the requisite analysis.

Generally, in order for a physical or mental impairment to be "substantially limiting," the individual must be:

> (i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Martin v. AT&T Corp.*, 331 F. Supp. 2d 1274, 1298 (D. Colo. 2004) (citations omitted).

The Tenth Circuit has applied the Ninth Circuit's reasoning in *McAlindin*, and held that "in order to demonstrate a plaintiff's major life activity of interacting with others was substantially affected, a plaintiff must show that his relations with others were characterized on a regular basis

by severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary." *Steele*, 241 F.3d at 1255 (quoting *McAlindin*, 192 F.3d at 1235) (other citations and internal quotation marks omitted); *accord Lanman v. Johnson County*, 393 F.3d 1151, 1158 (10th Cir. 2004); *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 499 (10th Cir. 2000).

Plaintiff has failed to argue or establish such severe problems in interacting with others. Although it is true that Plaintiff's physician's limited him to "minimal interaction" with others, Plaintiff argues that Defendant wronged him by limiting him to work alone, because he felt he could work with up to six other people. (Pl.'s Resp. at 13, Resp. to Statement of Undisputed Material Fact ¶ 14.) Further, Plaintiff testified that he goes to Alcoholics Anonymous meetings and participates in discussions almost every day, and frequently takes his daughter to such popular — and generally populous — establishments as Burger King and Chuck E. Cheese. (Def.'s Br., Ex A–1 at 69 [Dep. of Kevin Massari].) Finally, Plaintiff began working for the USPS in Colorado Springs in 1996. (Compl. ¶ 18.) Plaintiff's seven-year employment history contains only three recorded problems with his co-workers or the public. (*Id.*, Undisputed Material Facts ¶¶ 1, 10, 20.) This does not establish the pattern of failure to interact on a regular basis requisite to demonstrate substantial limitation in interacting with others. *See Lanman*, 393 F.3d at 1158. Consequently, Plaintiff has failed to evince that he is disabled under the first definition in the Rehabilitation Act.

### 2)   *Record of Impairment*

Plaintiff argues that he has a record of impairment sufficient to satisfy the second disability definition under the Rehabilitation Act. (Pl.'s Resp. at 16.) "'To have a record of such

an impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity.'" *Doebele*, 342 F.3d at 1132 (quoting *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1087 [10th Cir. 1999]).  "'The record-of-impairment standard is satisfied only if [Plaintiff] actually suffered [an impairment] that substantially limited one or more of [his] major life activities.'" *Id.*

Here, Plaintiff proffers letters and an affidavit from his physicians that arguably establish a record of impairment.  (Pl.'s Resp. at Ex. 4 [6/4/1992 letter], Ex. 5 [11/25/1991 letter], Ex. 6 [4/23/1997 letter], Ex. 18 ¶¶ 3,4 [Aff. of Edwin Shockney, Ph.D.].)  Nevertheless, Plaintiff's bare assertion that he "meets element[] . . . [two]" does nothing to satisfy his burden to demonstrate that his impairment on record substantially limits his major life activity of interacting with others. (*Id.* at 16.)  Plaintiff offers neither evidence nor argument to satisfy his burden, and I decline to do so for him at this juncture.  Accordingly, Plaintiff does not meet the second disability definition under the Rehabilitation Act.

### 3)      *Regarded as Disabled*

Additionally, Plaintiff argues that Defendant regarded Plaintiff as disabled.  (Pl.'s Resp. at 16.)  In order to satisfy the third statutory definition of disability, Plaintiff must establish that Defendant perceived Plaintiff to be disabled within the meaning of the Rehabilitation Act. *McGeshick*, 357 F.3d at 1151.  Plaintiff may satisfy this burden by establishing that: (1) Defendant mistakenly believes that Plaintiff has a physical impairment that substantially limits one or more major life activities, or (2) Defendant mistakenly believes that Plaintiff's actual non-limiting impairment substantially limits one or more major life activities.  *Sutton v. United Air Lines*, 527 U.S. 471, 489–90 (1999).  In short, Plaintiff must establish that Defendant harbored

misconceptions about Plaintiff's abilities — either as to whether Plaintiff has a substantially limiting impairment, or as to the level of limitation caused by an impairment Plaintiff has.  *Id.*

Here, Plaintiff has done neither.  Plaintiff supports his position with assertions that Defendant "knew of Plaintiff's disability" based on medical documentation in Plaintiff's file and letters sent to Defendant by Plaintiff's physicians.  (Pl.'s Resp. at 16.)  Plaintiff's assertions speak to Defendant's awareness of Plaintiff's medical conditions, but hardly suffice to satisfy Plaintiff's burden under the Rehabilitation Act.  Plaintiff flatly fails to address the crux of the third statutory disability definition — whether Defendant believed that Plaintiff's impairments substantially limited his major life activity of interacting with others.  *See Rakity v. Dillon Cos.*, 302 F.3d 1152, 1162 (10th Cir. 2002).  Accordingly, Plaintiff does not meet the third definition of disability under the Rehabilitation Act.

Plaintiff does not meet any of the definitions of disabled under the Rehabilitation Act. Therefore, Plaintiff cannot establish a *prima facie* case and fails to raise a material question of fact with respect to his claim for failure to accommodate.

### (2)    *Disparate Treatment*

Generally, "Rehabilitation Act [disparate treatment] claims are analyzed in a manner similar to ADA claims except that the Rehabilitation Act imposes a requirement that a [plaintiff's] disability serve as the sole impetus for defendant's adverse action against [plaintiff]."  *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 n.5 (8th Cir. 1999)  The burden-shifting analysis established by *McDonnell Douglas* generally applies to discrimination claims under the Rehabilitation Act alleging disparate treatment.  *Peebles*, 354 F.3d at 766 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 [2000]).  I analyze each step below.

### (a)        Prima Facie Case

The four elements of a *prima facie* case are that: (1) Plaintiff is disabled within the

definition of the Rehabilitation Act; (2) Plaintiff is "otherwise qualified" for the position, meaning

he can perform the essential functions of his job with or without accommodation; (3) Defendant

discriminated against Plaintiff because of his disability.  *See Schrader v. Ray*, 296 F.3d 968, 971

(10th Cir. 2002); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999);

*Woodman*, 132 F.3d at 1338.

For the reasons outlined *supra* at *Analysis* § 2di(1)(a), Plaintiff cannot demonstrate that he

was disabled within the meaning of the Rehabilitation Act and thus cannot establish a *prima facie*

case for his claim of disparate treatment.  Accordingly, Defendant is entitled to summary

judgment on Plaintiff's claims for discrimination though failure to accommodate and disparate

treatment under the Rehabilitation Act.

### ii.        Retaliation under the Rehabilitation Act

Title 42 United States Code section 12203(a), which applies to cases brought under the

Rehabilitation Act by the express terms of Title 29 United States Code section 791(g), provides

that "no person shall discriminate against any individual because such individual has opposed any

act or practice made unlawful by this chapter."  42 U.S.C.A. §  12203(a) (2005); 29 U.S.C.A. §

791(g) (2005).  Accordingly, an employee who opposes disability discrimination by filing a

complaint with the agency responsible for investigating such complaints engages in activity

protected by the Rehabilitation Act.  *See Williams v. O'Neill*, 23 Fed. Appx. 738, 740 (9th Cir.

2001).  Plaintiff alleges that Defendant retaliated against him by putting him on emergency

placement and issuing him a notice of removal.  (Compl. ¶¶ 49–51.)  Defendant contends that it is

entitled to summary judgment because Plaintiff cannot repudiate its legitimate, nondiscriminatory reasons for the adverse employment actions.  (Def's Br. at 15–17.)  The *McDonnell Douglas* framework applies to Plaintiff's retaliation claim.  *See Wells*, 325 F.3d at 1212.  I apply each step in turn.

### *(1)     Prima Facie Case*

To establish a *prima facie* case for retaliation under the Rehabilitation Act, Plaintiff must show that: (1) he engaged in protected opposition under the Rehabilitation Act; (2) Defendant took an adverse employment action against Plaintiff; and (3) a causal connection exists between the protected opposition and the adverse action.  *See Humbles v. Principi*, 141 Fed. Appx. 709, 713 (10th Cir. 2005); *Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir. 2000); *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

### *(a)     Protected Opposition*

Plaintiff asserts that he filed complaints with the EEOC alleging disability discrimination on September 20, 2002 and October 23, 2002.  (Compl. ¶¶ 5, 6.)  Plaintiff asserts that he subsequently filed additional complaints on March 23, 2003 and April 5, 2003, and added a claim through an amendment on September 2, 2003.  (*Id.* ¶¶ 8, 9, 11.)  It is illogical to argue that Defendant could have retaliated against Plaintiff on January 8, 2003 and February 3, 2003 for complaints Plaintiff filed after those dates.  Thus, I find that Plaintiff satisfies the protected opposition requirement with his September 20, 2002 and October 23, 2002 EEOC complaints alleging disability discrimination.

### *(b)*      *Contemporaneous with Adverse Action*

Defendant put Plaintiff on emergency placement on January 8, 2003 and issued Plaintiff a

notice of removal on February 3, 2003.  (Def.'s Br., Undisputed Material Facts ¶¶ 20, 21;

*admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 20.)  Plaintiff

undertook his protected oppositions on September 20, 2002 and October 23, 2002.  (Compl. ¶¶

5, 6.)  The approximated three-to-four month window between the protected oppositions and the

adverse employment actions is sufficiently contemporaneous to progress to the third prong.

### *(c)*      *Causal Connection*

A causal connection may be demonstrated by setting forth "'evidence of circumstances

that justify an inference of retaliatory motive, such as protected conduct closely followed by

adverse action . . . .  In other words, [the plaintiff] must present some evidence that [the]

employer undertook the adverse employment action for the purpose of retaliation.'"  *Humbles v.

Principi*, 141 Fed. Appx. 709, 713 (citing *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301,

1320–21 [10th Cir. 1999])(alterations in original).  The Tenth Circuit has found that a "six-week

period between protected activity and adverse action may be sufficient, standing alone, to show

causation, but a three-month period, standing alone, is insufficient."  *Meiners*, 359 F.3d at 1231.

As discussed above at *Analysis* § 2bii(1)(c) *supra*, proximity in time between Plaintiff's

September 20, 2003 protected opposition and Defendant's January 8, 2003 and February 3, 2003

adverse employment actions does not support Plaintiff's claim.  Plaintiff has offered nothing

beyond the temporal proximity in support of his claim, and thus fails to establish a *prima facie*

case.  Similarly, because more than three months separate Plaintiff's October 23, 2002 protected

opposition and Defendant's February 3, 2003 averse employment action, proximity in time does

not support Plaintiff's claim.  Plaintiff offers nothing beyond the temporal proximity to support his

claim and again fails to establish a *prima facie* case.

    As to Plaintiff's October 23, 2002 EEOC complaint and Defendant's January 8, 2003

emergency placement, a period of time shorter than three months separates the opposition and the

adverse employment action.  Thus, proximity in time supports Plaintiff's claim, and Plaintiff has

satisfied his burden to establish a *prima facie* case.  Accordingly, I continue to the subsequent

*McDonnell Douglas* stages.

### (2)    *Legitimate, Nondiscriminatory Reason*

    Once the Plaintiff has established a *prima facie* case, "the burden shifts to the employer to

offer a legitimate, nondiscriminatory reason for the challenged action."  *Selenke v. Med. Imaging

of Colo.*, 248 F.3d 1249, 1259 (10th Cir. 2001); *accord Butler v. Prairie Village*, 172 F.3d 736,

759 (10th Cir. 1999).  Here, Defendant satisfies this burden by explaining that Plaintiff was put on

emergency placement on January 8, 2003 because of his involvement in a verbal confrontation

with a co-worker on the same date.  (Def.'s Br. at 15.)

### (3)    *Pretext*

    Once a defendant articulates a legitimate, nondiscriminatory reason for its adverse

employment action, "the plaintiff's burden is only to demonstrate a genuine dispute of material

fact as to whether the proffered reasons were unworthy of belief."  *Butler*, 172 F.3d at 750.

Here, although Plaintiff sufficiently establishes an inference of retaliatory motive because the

January 2003 emergency placement is close in time to his October 2002 EEOC complaint,

Plaintiff does not rebut Defendant's evidence of Plaintiff's altercation with a co-worker as the

nondiscriminatory reason for the emergency placement.  (Def.'s Br., Undisputed Material Facts ¶

20, Ex. A–1 at 35–38 [Aff. of Kevin Massari]; *deemed admitted at* Pl.'s Resp., Resp to Statement of Undisputed Material Facts ¶ 19.)  Plaintiff fails to present any direct evidence of retaliatory animus or circumstantial evidence that adequately demonstrates an improper motivation behind Defendant's decision.  *See Gonzagowski v. Widnall*, 115 F.3d 744, 749 (10th Cir. 1997). Accordingly, Plaintiff has not raised a question of fact and Defendant is entitled to summary judgment on Plaintiff's claim for relief for retaliation under the Rehabilitation Act.

**3.**     ***Conclusions***

Based on the foregoing it is therefore

ORDERED as follows:

1.     Defendant's motion for summary judgment (# 13) is GRANTED.

2.     Plaintiff's motion to strike (# 14) is DENIED.

3.     The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing the action with prejudice.  Defendant may have costs by filing a bill of costs within eleven days of the date of this order.

Dated this 8th day of February, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge